ORDERED in the Southern District of Florida on 09/23/07



Raymond B. Ray, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

CURTIS RACHEL AND
CHRISTENIA RACHEL,

    Debtors.
_____/

Case No. 04-24446-BKC-RBR

Chapter 13

CURTIS RACHEL and
CHRISTENIA RACHEL,

    Debtors/Plaintiffs,

-vs-

JAMES R. GLEASON,

    Defendant.
_____/

Adv. Pro. 07-01404-RBR

## ORDER GRANTING RACHELS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY [DE 12]

This matter came before the Court at 9:30 a.m. on Wednesday, August 22, 2007 for hearing on Plaintiffs' Motion for Partial Summary Judgment As To Liability [DE 12]. Counsel for the Plaintiffs appeared at the hearing, as did Defendant James R. Gleason *pro se*. The Court having considered all matters of record, including without limitation Gleason's Answer to the Complaint [DE 6], the uncontroverted deposition testimony of the Rachels [DE 15, 16] taken in the related adversary styled *Rachel v. Rosedale, et al.*, Adv. Case No. 04-2226-BKC-RBR-A [at which Gleason

was represented by counsel], the prior deposition of Defendant James R. Gleason [DE 13] taken in the related adversary styled *Rachel v. Rosedale, et al.*, Adv. Case No. 04-2226-BKC-RBR-A, and the prior deposition of Louis Rosedale a/k/a Louis Muscari [DE 14] taken in the related adversary styled *Rachel v. Rosedale, et al.* , Adv. Case No. 04-2226-BKC-RBR-A. The Court has also considered the lack of opposition papers or evidence presented in opposition to the pending motion, as well as Gleason's statement, made in open Court at the hearing on the pending motion, that he would not seek to testify in opposition to the Rachels' evidence if this matter proceeded to trial.

Courts have held that adverse inferences may be drawn in the civil context when Defendants invoke the privilege in refusing to testify in response to probative evidence offered against them. *Mitchell v. United States*, 526 U.S. 314, 328 (U.S.1999). Courts may not draw adverse inferences, if it is the sole basis for Plaintiff's prima facie case, or will cause the "automatic entry of summary judgment." *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir.1991) (citing *Pervis v. State Farm and Case. Co.*, 901 F.2d 944, 949 (11th Cir.1990)). In this case there is sufficient evidence independent of the Defendant's assertion of his fifth amendment right which, uncontested, proves the Plaintiffs' case.

Gleason and Muscari's a/k/a Rosedale have both invoked their Fifth Amendment right against self-incrimination when given the opportunity to oppose or contest the Rachels' testimony, which standing alone and uncontested is sufficient to meet the burden for relief. As such the Rachels are entitled to an adverse inference against Gleason. Due to this inference and the lack of other evidence presented or proposed to be presented to rebut the Rachels' claims this matter is ripe for a summary judgment analysis.

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides for the granting of summary judgment if "... there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. A fact is material if it "... might affect the outcome fo the suit under governing (substantive) law..." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A dispute of fact is genuine "... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* The moving party has burden of establishing the right of summary judgment*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The evidence of record shows that the facts underlying the Rachels' claims are not genuinely in dispute and the Defendant has refused to offer any evidence which might raise a material issue of fact. Accordingly, the Rachels are entitled to partial summary judgment as to liability as a matter of law. In support of these conclusions of law, the Court makes the following findings of fact:

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper in this District.

The Rachels, Curtis Rachel and Christenia Rachel, are the prior owners of record of a residence located at 383 S.W. 64 Terrace, Margate, Broward County, Florida. The Rachels were liable to Chase Manhattan Bank for a residential mortgage secured by the Rachel Home. On October 23, 2002 a complaint for foreclosure was filed by Chase Manhattan Bank against the Rachels. The Rachels needed $9,997.52 to reinstate the mortgage. The Rachels received a letter from "Foreclosure Assistance & Counseling Services", advertising that they could "help" the Rachels save their home from foreclosure. Curtis and Christenia Rachel personally went to the offices of "Foreclosure Assistance & Counseling Services", Lawyers Building, Fort Lauderdale, FL 33315, upon receiving the letter, to seek help with the pending mortgage foreclosure.

The Rachels met with a man claiming to be Louis "Rosedale" [his legal name was Louis Muscari] (hereinafter "Muscari"). During this meeting, Muscari asked for the Rachels' driver's licenses which, contained the Rachels' signatures, and made copies. Muscari explained that he would loan the Rachels approximately $10,000 to get out of foreclosure and that over the subsequent 12 months, the Rachels would pay back to Muscari the borrowed $10,000, plus interest. Under this arrangement, the Rachels would be required to pay to Muscari monthly payments of $1,350. Muscari advised the Rachels that he would make the monthly mortgage payments to Chase Manhattan Bank from the Rachels' monthly payments of $1,350. to Muscari. Muscari stated during this first visit that his business associate, named James R. Gleason, would come to their house, look over their property and would have documents for them to sign to memorialize the $10,000 loan from Muscari. The Rachels also paid Muscari $300, for which Muscari agreed to prepare an answer to the foreclosure lawsuit which Chase Manhattan Bank had filed against the Rachels.

On November 12, 2002 Gleason, alone, visited the Rachels at their home in Margate, at about 9:30 p.m. Gleason handed the Rachels a business card on which the name "Eagle Mortgage & Investments" was printed; Gleason's name was listed on the card as a licensed Mortgage Broker. Gleason conducted a brief walk-through of the interior of the Rachel Home, and stated he would return the next day to view the outside of the Rachel Home. Gleason, during this visit, proceeded to pull out a folder while sitting in the Rachels' living room. Gleason handed the Rachels a document with blanks. The Rachels were aware that they would have to pay $1,350 a month for twelve months to Muscari; their regular monthly mortgage payment to Chase Manhattan Bank was $1,179.00 a month. Neither Muscari nor Gleason ever explained to the Rachels the actual nature or ramifications of any documents presented to them. Mrs. Rachel inquired about a blank space in one of the documents handed to her by Gleason, which referred to a dollar amount. Mrs. Rachel objected to this blank space, but was advised by Gleason that Muscari and Gleason did not have the total reinstatement figures yet from Chase Manhattan Bank, and that is why the dollar figure was blank. The Rachels thereafter signed the documents presented by Gleason. Gleason was the only person in attendance with the Rachels when these documents were signed at their home. Gleason did not provide the Rachels with a copy of any documents that he had presented to the Rachels. Ultimately, the amount of $135,000 was inserted into the document, without the knowledge or consent of the Rachels.

At no time were the Rachels ever shown a document titled "Quitclaim Deed" by Gleason or Muscari. The Rachels did not sign any documents in the presence of any other witnesses or a notary public. Unbeknownst to the Rachels, Muscari and Gleason arranged to have a Quitclaim Deed, purporting to contain the genuine and authentic signatures of the Rachels, recorded in the Public Records of Broward County, Florida in OR Book 34385 at Page 918; through this Quitclaim Deed, the Rachels purportedly conveyed title of their residence to Muscari.

The Rachels testified that the signatures affixed to the Quitclaim Deed, under which Muscari claimed ownership of the Rachels' home, were not their genuine and authentic signatures. Neither Muscari nor Gleason have controverted the Rachels regarding this fact. The Rachels made payments

to Muscari for 12 months in the amount of $1,350.00, plus a late fee of $50.00 and a returned check charge of $135.00.

The Rachels received a letter dated December 15, 2003 from the Law offices of Bruce D. Schwartz, P.A. and signed by attorney Bruce D. Schwartz (who then represented Muscari, as purported owner of the Rachels' home), demanding that they pay $135,000.00 to Muscari, or move out of the house by January 20, 2004. At no time were the Rachels ever advised by Muscari or Gleason that they would be required to deed over the title of their home in order to get a $10,000 loan from Muscari. The Rachels and their two grandchildren were forced to abandon their 4-bedroom, 2- bath home during the second week of January 2004, pursuant to the demand letter from attorney Bruce D. Schwartz, as the Rachels were unable to refinance their home or pay the $135,000 by January 15, 2004 as demanded of them. At the time, the Rachels as owners believed their home had a fair market value of $170,000.

Muscari conducted his business through his company, Foreclosure Assistance & Counseling Services (hereinafter referred to as "Foreclosure Assistance ") which had its principal place of business located at 600 S.W. 4 Avenue, Suite 104, Fort Lauderdale, FL 33315. Gleason, was a licensed broker/realtor, licensed mortgage broker and notary public, and assisted Muscari through the use of his knowledge, experience and position in the real estate and mortgage businesses, to gain access to the Rachels' home, falsely and surreptitiously obtain their signature on a document which in fact was not a loan agreement but a 'lease'. This document would later be used to forcibly remove the Rachels from their own homestead under threat of having to pay $135,000 to Muscari simply to "keep" their home. Gleason further participated in this conspiracy with Muscari by misleading the Rachels into believing that Gleason and Muscari aimed to help the Rachels procure a short-term loan to cure the arrearage on their first mortgage, and to save their home from loss through foreclosure by their first mortgage holder.

The actions of Muscari and Gleason were carried out as part of a plan and conspiracy to defraud the Rachels, the result of which was to illegally and wrongfully wrest title of the Rachels' home and place Muscari into purported ownership, so that Muscari could eventually sell their homes

5

for illegal profit and gain to Muscari, Gleason and possibly others.

Gleason, in his role as a notary public, conspired with Muscari to harm the Rachels by causing a falsely witnessed and notarized Quit Claim Deed, with forged signatures of the Rachels upon it, to be recorded into the Public Records of Broward County.

Muscari and Gleason conspired to defraud the Rachels by engaging jointly into a scheme to use the aforesaid methods to steal title to the Rachels' home, for the purpose of selling the property free and clear of any claims of the Rachels and for their own personal gain.

*Violation of Statutory Duties as a Notary Public*

James R. Gleason has been a notary public since 1992, and at all times material hereto, Gleason was licensed by the State of Florida pursuant to Florida Statutes Section 117.01 *et seq.* Gleason put his seal on a Quit Claim Deed dated the 12th day of November 2002 which falsely stated in his acknowledgment that the Rachels were duly sworn and executed the document in his presence (and in the presence of two witnesses) that he was notarizing. The Rachels never executed the Quit Claim Deed dated 12 day of November 2002, before a notary public and two witnesses, after being placed under oath. The Witnesses who signed the Quit Claim Deed were unknown to the Rachels on November 12, 2002 and could not have witnessed the Rachels' purported signatures at the Rachels' home. This Court finds that Gleason violated Florida Statutes Section 117.01 *et seq.*, as part of his plan and conspiracy with Muscari to improperly notarize documents to be recorded in the public records. The false certification by James R. Gleason is the proximate cause of the damages suffered by the Rachels, in that the Rachels lost title to their house to Muscari on the basis of a fraudulent Quit Claim Deed and its subsequent recording in the Public Records of Broward County, which would never have been recorded without Gleason's fraudulent notary attestation affixed thereto. Gleason was derelict in his statutory duties as a notary when he falsely notarized and acknowledged a purported document which had in fact not been signed by the Rachels in front of him personally and under oath.

Based on the foregoing findings of fact, it is hereby,

**ORDERED and ADJUDGED** that Defendant James R. Gleason is **LIABLE** to the Rachels

for damages, based on each of the claims asserted by the Rachels in this action. The Court shall receive affidavits or other evidence as appropriate to adjudicate the amount of damages recoverable by the Rachels from Defendant James R. Gleason.

###

<u>Copy furnished to:</u>
Anthony J. Carriuolo, Esq.
James R. Gleason